Argued and submitted February 14, affirmed April 4, 2001

# OREGON PUBLIC EMPLOYEES UNION,
*Respondent,*

*v.*

# STATE OF OREGON,
on behalf of Department of Administrative Services,
*Petitioner.*

## (UC-22/23-99; CA A110274)

22 P3d 251

Richard D. Wasserman, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Joel Rosenblit argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Wollheim and Brewer, Judges.

BREWER, J.

**BREWER, J.**

The Oregon Department of Administrative Services (DAS) seeks review of three final orders of the Employment Relations Board (ERB) certifying election results that added temporary workers to bargaining units represented by the Oregon Public Employees Union (OPEU). DAS contends that the statutes governing temporary employees demonstrate the legislature's intent to exclude them from regular-status employees' bargaining units. DAS also contends that ERB's determination that temporary employees have a reasonable expectation of recurring employment was not supported by substantial evidence. We affirm.

Most of the relevant facts are not in dispute. OPEU filed unit clarification petitions before ERB seeking to add approximately 1,100 unrepresented temporary employees[1] to its existing strike-eligible and strike-ineligible bargaining units, which represent permanent, part-time, seasonal, limited-duration, and intermittent part-time on-call (collectively, "regular-status") employees. DAS opposed the petitions, and an administrative law judge (ALJ) conducted an evidentiary hearing.

At the hearing, OPEU presented testimony from eight workers who either were or had been temporary employees of the Eastern Oregon Training Center (EOTC) (operated by the Mental Health and Developmental Disabilities Division), the Oregon Youth Authority (OYA), or the State Office for Services to Children and Families (SCF). In addition, OPEU presented testimony from Paul McKenna, research director and collective bargaining coordinator for OPEU. McKenna testified that about 47 percent of permanent EOTC employees and about 58 percent of permanent OYA employees had begun their agency careers as temporary employees. ERB determined that:

> "Temporary employees at issue here work in the same classifications as other employees in the existing OPEU

---

[1] The record indicates that a number of state agencies use temporary employees. For purposes of this review, the parties do not distinguish among agencies as to the nature of their relationships with their temporary employees.

bargaining units. In any given agency, temporary employees perform substantially the same duties as permanent employees in the same classification and are often placed in the same salary ranges as the permanent employees. When temporary employees fill in for permanent employees, they 'interchange' with permanent employees and share the same minimum job qualifications as permanent employees. They usually work at the same work location as permanent employees, have common supervision, and work the same schedules.

"* * * * *

"[Although recurring employment is] not guaranteed * * *, the experience gained as temporary employees appears to provide many of them with a reasonable expectation of reemployment. Temporary employees have been told by their supervisors that temporary employment can assist them in gaining permanent jobs. They also have witnessed [DAS] hire their temporary peers into permanent or limited duration appointments. At EOTC and OYA, significant numbers of temporary employees working as habilitative training technicians and group life coordinators have been hired as permanent employees in those same classifications." (Citation omitted.)

In reaching its decision, ERB rejected DAS's argument that a clause in a form titled "Conditions of Temporary Employees," which each temporary employee signs, precluded a reasonable expectation of recurring employment. The form advises that "[y]our temporary appointment in no way assures or implies an appointment to any permanent position with [the hiring agency]."

In its order, ERB concluded that temporary employees share a community of interest with other members of OPEU's bargaining units and, with exceptions not relevant here, should be added to the existing units. After representation elections, ERB issued additional orders certifying the election results and adding temporary employees to those existing bargaining units. DAS seeks review of all three orders. We review ERB's legal conclusions for errors of law and its factual findings for substantial evidence. ORS 183.482(8)(a) to (c); *Lane Unified Bargaining v. South Lane Sch. Dist.*, 169 Or App 280, 282, 9 P3d 130 (2000).

■ ERB exercises authority pursuant to the Public Employee Collective Bargaining Act (PECBA), ORS 243.650 to ORS 243.782. ORS 243.682 describes the procedure for designating an appropriate bargaining unit for public employees, and it sets out factors for ERB to consider. ORS 243.682 provides, in part:

"If a question of representation exists, [ERB] shall:

"(1) Upon application of a public employer, public employee or a labor organization, designate the appropriate bargaining unit, and *in making its determination shall consider such factors as community of interest, wages, hours and other working conditions of the employees involved, the history of collective bargaining, and the desires of the employees.* [ERB] may determine a unit to be the appropriate unit in a particular case even though some other unit might also be appropriate." (Emphasis added.)

When ERB considers the criteria listed in ORS 243.682(1), it has discretion to decide how much weight to give to each factor in making an appropriate unit determination. *Welches School Dist. v. Welches Education Assn.,* 116 Or App 564, 569, 842 P2d 437 (1992). DAS concedes that temporary employees may bargain collectively and that ERB is authorized to determine their appropriate bargaining units. However, in its first assignment of error, DAS argues that the temporary employment statutes, primarily ORS 240.309, render ERB's decision inappropriate *as a matter of law*.

In analyzing questions of representation, ERB considers the factors listed in ORS 243.682(1). By its terms, that list of factors is nonexclusive. DAS argues that an unlisted factor preempted ERB's decision in this case. DAS contends that the legislature intended to segregate temporary from regular-status employees in establishing bargaining units. DAS cites no statutory provision expressly prohibiting ERB from adding temporary employees to bargaining units containing regular-status employees. Instead, DAS relies on various statutory distinctions between the rights of temporary employees and other employees that, it argues, *implicitly* demonstrate such an intent.

DAS relies primarily upon ORS 240.309, which provides:

"(1)   Temporary employment shall be used for the purpose of meeting emergency, nonrecurring or short-term workload needs of [DAS].

"(2)   A temporary employee may be given a nonstatus appointment without open competition and consideration only for the purposes enumerated in this section. Temporary appointments [shall] not be used to defeat the open competition and consideration system.

"(3)   A temporary employee may not be employed in a permanent, seasonal, intermittent or limited duration position except to replace an employee during an approved leave period.

"(4)   Employment of a temporary employee for the same workload need, other than for leave, may not exceed six calendar months. The decision to extend the period of employment may be delegated by the Personnel Division of [DAS] to other state agencies. Approval to extend shall be allowed only upon an appointing authority's finding that the original emergency continues to exist and that there is no other reasonable means to meet the emergency. Agency actions under this subsection are subject to post-audit review by [DAS] as provided in ORS 240.311.

"(5)   Employment of a temporary employee for different workload needs shall not exceed the equivalent of six calendar months in a 12-month period.

"(6)   A temporary employee shall not be denied permanent work because of the temporary status. Temporary service shall not be used as any portion of a required trial service period.

"(7)   The Personnel Division of [DAS] shall report the use of temporary employees, by agency, once every six months, including the duration and reason for use or extensions, if any, of temporary appointments. The reports shall be made available upon request to interested parties, including employee organizations. If any interested party alleges misuse of temporary employees, the division shall investigate, report its findings and take appropriate action.

"(8) The Department of Justice may use temporary status appointments for student law clerks for a period not to exceed 24 months."

In contrast to temporary employees, regular-status employees generally may be hired only through open competition. *See* ORS 240.306. In addition, temporary employment may be terminated at will, but regular-status employment may be terminated only for cause or "lack of work, curtailment of funds, or reorganization requiring a reduction in force." ORS 240.316(2). Temporary employees also are not entitled to health benefits, whereas regular-status employees are entitled to health benefits. *See* ORS 243.135 (entitling "eligible employees" to health benefit plans) and 243.105(4)(b)(D) (excluding temporary employees from definition of "eligible employees").

■ We are not persuaded by DAS's recital of statutory distinctions. ORS 240.309 establishes many terms of temporary employment and, thus, affects the nature and scope of collective bargaining for temporary employees. It does not, however, preclude ERB from including them in the same bargaining unit with regular-status employees. Indeed, the statute does not refer to collective bargaining at all.[2] The other statutory distinctions upon which DAS relies also reflect differences between the status and rights of temporary and other employees, but they, too, furnish no compelling basis to determine, *as a matter of law*, that such employees may not be joined in a single bargaining unit.

■ To illustrate, intermittent employees—like temporary employees—are not entitled to health benefits, ORS 243.105(4)(b)(C), but nonetheless they are members of the same bargaining units as permanent employees. Historically, OPEU simply has bargained for special provisions in

---

[2] DAS argues that a telling difference between temporary employees and regular-status employees is that ORS 240.309 and ORS 240.307 provide the enforcement mechanism for ORS 240.309, *i.e.*, to protect regular employees *against* temporary employees, thus setting the two groups in opposition. It also argues that temporary employees would be less likely to support a strike than would regular-status employees. To the extent that there is any merit to those arguments, they are for ERB to evaluate in determining the employees' community of interest. *See* ORS 243.682(1). DAS has not shown that ERB erred as a matter of law in that respect.

its collective bargaining agreements for each type of employment. The differences upon which DAS relies do not override, as a matter of law, the community of interest that those employees, as well as temporary employees, have in broader issues relating to pay, hours, and working condition. In short, the temporary employment statutes do not implicitly limit ERB's authority under ORS 243.682(1) to weigh community of interest and other factors in determining appropriate bargaining units for temporary employees. We conclude that ERB did not err as a matter of law in determining that the regular-status bargaining units were appropriate for temporary employees.

In determining that temporary employees have a sufficient community of interest with regular-status employees to warrant their inclusion in the same bargaining units, ERB found that temporary employees have "a reasonable expectation of recurring employment."[3] In its second assignment of error, DAS contends that ERB's determination that temporary employees have a reasonable expectation of recurring employment is contrary to law and is not supported by substantial evidence in the record.

■ We briefly consider DAS's legal arguments. First, DAS argues that ORS 240.309 precludes ERB's finding. We disagree. Although ORS 240.309(2) constrains *DAS's* actions in hiring temporary employees, it does not address, much less, govern, the expectations of temporary employees themselves. Therefore, that provision does not foreclose ERB's finding.

■ DAS next contends that a portion of the "Conditions of Temporary Employment" form, which temporary employees sign, prevents them from holding a reasonable expectation of recurring employment. The form advises that "Your temporary appointment in no way assures or implies an appointment to any permanent position with [the hiring

---

[3] Neither party questions ERB's authority to consider temporary employees' expectations of recurring employment as a factor in evaluating the relevant "community of interest" under ORS 243.682(1). OPEU argues that that factor does not apply to the present circumstances, because the existing units already include intermittent employees, limited duration employees and others who may not expect to obtain *permanent* employment. We assume, for present purposes, that the factor is relevant here.

agency]." DAS argues that "no temporary employee reading that language could have a reasonable expectation of reemployment." DAS is mistaken. The fact that temporary employment does not guarantee permanent employment does not mean that it confers no advantage in securing a regular-status position. A temporary employee might reasonably expect regular-status employment even if it is not assured.

■　DAS also argues that the evidence does not support ERB's finding that "any meaningful percentage of temporary employees" has a reasonable expectation of recurring employment. OPEU responds that DAS's argument is tantamount to a demand that "the union present 551 witnesses, a majority of temporary employees, to testify about their reasonable expectation of reemployment." OPEU contends that such a demand is especially unreasonable, because a unit clarification proceeding is *investigatory*, with neither side having any particular burden of proof. *See* OAR 115-010-0070(5)(a).[4] We agree.

■　ERB was not required to find that a particular percentage of temporary employees expect to obtain permanent employment in order to determine that temporary and regular-status employees share a community of interest. Eight witnesses from three of the agencies that use the greatest numbers of temporary employees presented virtually uniform testimony that, as temporary employees, they expected to obtain recurring employment with DAS. They testified that their expectations were based on statements made by managers and other temporary employees who had become permanent employees. ERB expressly relied on that testimony and on McKenna's testimony that 47 percent of

---

[4] OAR 115-010-0070 provides, in part:

"(5)　Burden of proof:

"(a)　Representation, clarification and unit redesignation hearings are investigatory. Their purpose is to develop a full factual record. There is no burden of proof."

regular-status employees at OYA and 58 percent of regular-status employees at EOTC had started as temporary employees. DAS offered *no* evidence in rebuttal.[5] There was substantial evidence to support ERB's finding.

Affirmed.

---

[5] DAS also argues that the record does not show that "some meaningful proportion" of temporary employees later were hired as regular-status employees. Assuming that the proportion of temporary employees later hired as regular-status employees has a bearing on the *reasonableness* of temporary employees' expectations of recurring employment, the unrebutted testimony established that 47 percent of permanent EOTC employees and 58 percent of permanent OYA employees began their agency careers as temporary employees. According to the evidence, those agencies are among the heaviest users of temporary employees.