Argued and submitted June 27, affirmed September 25, 2002

SERVICE EMPLOYEES INTERNATIONAL
UNION LOCAL 503,
Oregon Public Employees Union,
*Respondent,*

*v.*

STATE OF OREGON,
DEPARTMENT OF ADMINISTRATIVE SERVICES,
*Petitioner.*

UP-12-01; A115303

54 P3d 1043

Richard D. Wasserman, Assistant Attorney General, argued the cause for petitioner. With him on the briefs were

Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Joel Rosenblit argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Warren, Senior Judge.

HASELTON, P. J.

Warren, S. J., dissenting.

## HASELTON, P. J.

The State of Oregon, Department of Administrative Services (DAS), seeks judicial review of a final order of the Employment Relations Board (ERB) holding that DAS committed an unfair labor practice by refusing to bargain with the Service Employees International Union Local 503 (SEIU) over a proposal concerning health care benefits for temporary employees. The issue presented is purely a legal one; we review ERB's legal conclusion for errors of law. ORS 183.482(8); *Eugene Police Employee's Assoc. v. City of Eugene*, 157 Or App 341, 343, 972 P2d 1191 (1998), *rev den*, 328 Or 418 (1999). For the following reasons, we affirm.

The pertinent facts are not disputed. SEIU represents several units of State of Oregon employees that include temporary employees. SEIU and DAS commenced collective bargaining concerning those units in June 2000. During the course of arbitration, SEIU submitted proposals concerning health benefits for the temporary employees. DAS refused to bargain on the subject of health benefits for the temporary employees, taking the position that it was a prohibited subject of bargaining.

More specifically, SEIU proposed the following: "Health benefits will be provided to full-time and part-time temporary employees * * * whether or not provided by PEBB."[1] DAS responded that the proposal concerning health benefits for temporary employees was a prohibited subject of bargaining "because the Legislature has expressly stated that temporary employees cannot participate in [PEBB's] health plans. To require the Employer to enable temporary employees to participate in [PEBB's] plans would require the Employer to commit an act that violates the law." SEIU responded with a proposal that, if DAS were prohibited from providing the health care benefits through PEBB, then DAS would make contributions to SEIU's Health and Welfare Trust Fund in specified amounts to be used for provision of health benefits to the temporary employees. DAS asserted that it could not provide monetary contributions to be used to

---

[1] PEBB stands for the Public Employees' Benefit Board. *See generally* ORS 243.061.

purchase health benefits for the temporary employees because no law specifically authorized such an expenditure. DAS took the position that the entire subject was prohibited, regardless of who provided the benefits.

Because DAS refused to bargain over health benefits for temporary employees, SEIU filed this unfair labor practice complaint. The matter was heard in May 2001, and ERB entered an order the following month determining that DAS violated the Public Employee Collective Bargaining Act (PECBA) when it refused to bargain over the subject of health care benefits for temporary employees. DAS timely filed a petition for judicial review of ERB's order in this court.

It is an unfair labor practice for a public employer to refuse "to bargain collectively in good faith with the exclusive representative" of unionized employees. ORS 243.672(1)(e). ORS 243.650 provides several relevant definitions:

> "(4) 'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to *employment relations* for the purpose of negotiations concerning mandatory subjects of bargaining [as defined in this section] * * *. Nothing in this subsection shall be construed to prohibit a public employer and a certified or recognized representative of its employees from discussing or executing written agreements regarding matters other than mandatory subjects of bargaining that are not prohibited by law, so long as there is mutual agreement of the parties to discuss these matters, which are permissive subjects of bargaining.
>
> "* * * * *
>
> "(7)(a) 'Employment relations' includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment."

(Emphasis added.)

To summarize, those subjects listed within subsection (7)(a) as "employment relations" are "mandatory" subjects of bargaining under subsection (4), and public employers are required to bargain on those subjects. The last sentence in subsection (4) provides that subjects that are *not*

mandatory are permissive and that the parties to a collective bargaining agreement may, by mutual agreement, include such permissive subjects in their bargaining, so long as they are "not prohibited by law." ORS 243.650(4).

■■    The statute thus breaks subjects of bargaining into two primary categories: mandatory and permissive. Any subject that is not mandatory is permissive, with two limitations: The parties must reach "mutual agreement" in order to address the permissive subject in collective bargaining, and the permissive subject must not be "prohibited by law." ORS 243.650(4). As a practical matter, though, it is not disputed that *any* proposal that is otherwise prohibited by law is considered a prohibited subject of bargaining, regardless of whether it might otherwise be described as "mandatory" or "permissive." *See, e.g., Eugene Education Assoc. v. Eugene School Dist. 4J*, 91 Or App 78, 754 P2d 580, *vacated on other grounds*, 306 Or 659, 761 P2d 524 (1988) (union proposal concerning layoffs based on seniority concerned conditions of employment, but the employer was not required to bargain over the proposal because it sought to require the employer to agree to a different method of layoffs from that specifically provided by statute). Here, the parties agree that employee health insurance generally falls within the ambit of ORS 243.650(7)(a) because it is an indirect monetary benefit and, thus, is a mandatory subject of bargaining, at least insofar as it is not prohibited.

DAS argues on appeal that it cannot be required to bargain over a proposal concerning health care benefits if it could not legally comply with that proposal. It argues that, under ORS 243.135(1), PEBB is required to "contract for a health benefit plan or plans best designed to meet the needs and provide for the welfare of eligible employees and the state." DAS, on the other hand, must "direct and manage all * * * insurance programs of state government *except for employee benefit insurance programs as otherwise provided in ORS chapter 243.*" ORS 278.405 (emphasis added). DAS reasons that it is prohibited from "direct[ing] and manag[ing]" a health insurance program for temporary employees because PEBB has exclusive power to contract for health benefit plans for eligible employees pursuant to ORS 243.135(1). DAS further reasons that, because PEBB can

contract for health benefit plans only for "eligible" employees, and the temporary employees represented by SEIU are not "eligible" under ORS 243.105(4),[2] it can neither provide the desired benefits through PEBB (given the limitations of ORS 243.105) or directly (given the limitations of ORS 278.405). It further posits that, because it lacks authority to provide the benefits directly, it would therefore be unlawful for it to do so indirectly by contributing to SEIU's Health and Welfare Trust Fund.

ERB rejected DAS's argument, concluding that nothing in SEIU's proposal would require DAS to act contrary to any provision of law:

"SEIU's proposal would not require the State to provide insurance or premium contributions for temporary employees through or to PEBB. SEIU acknowledges that temporary employees are not covered by PEBB statutes. Rather, SEIU's proposal would require the State to pay for alternative insurance coverage for such employees and make a specific contribution for that purpose to the SEIU Health and Welfare Trust. There is nothing about this proposal that violates any provision of the PEBB statutes. Likewise, there is nothing in the proposal that would require the State to act contrary to any provision in the PEBB statute[s]. * * *

"The State urges us to read the PEBB statutes as providing the PEBB with exclusive authority over health care benefits for *all* State employees even if the employees are ineligible for PEBB coverage. We find nothing in the PEBB statutes that suggest[s] such a pervasive intent.

"* * * * *

"The State also contends ORS 278.405 strips DAS of any authority over health care benefits. We disagree. ORS 278.405 grants DAS the general authority to direct and

[2] ORS 243.105(4)(b) provides, in part:

" 'Eligible employee' does not include individuals:
"* * * * *
"(D) Appointed under ORS 240.309[.]"

ORS 240.309, in turn, permits the employment of temporary employees to meet emergency, nonrecurring or short-term workload needs of the state.

manage all State risk management and insurance programs except those programs under PEBB's jurisdiction. Since temporary employees are excluded from PEBB coverage, the general grant given to DAS pursuant to ORS 278.405 authorizes—rather than restricts—DAS's authority to negotiate insurance benefits for temporary employees."

(Emphasis in original.) As explained below, we agree with ERB for two reasons, either of which is sufficient standing alone to justify ERB's conclusion.

We turn first to the essential premise of DAS's argument—that it has no duty to bargain over a proposal with which it cannot legally comply. For this proposition, DAS relies primarily on *Eugene Education Assoc.*, cited above, and *Sutherlin Ed. Assn v. Sch. Dist.*, 25 Or App 85, 548 P2d 204 (1976). *Eugene Education Assoc.* concerned a union proposal that provided for a system of seniority-based layoffs of teachers different from the system set forth in ORS 342.934. We stated:

"[T]he legislature established a detailed scheme for implementing reductions in teaching staffs. Almost every provision of [ORS 342.934] deals with a subject that otherwise might be an appropriate subject of collective bargaining. We see no indication that the legislature intended those provisions to be subordinate to PECBA or that they supersede collective bargaining only if they 'clearly and necessarily' preclude it."

*Eugene Education Assoc.*, 91 Or App at 82. Because the union's proposal "would have required District to violate the statute," we concluded that "[d]istrict did not need to bargain over that proposal, or to offer alternatives to it." *Id.*

By contrast, *Sutherlin Ed. Assn* concerned a union proposal about how to deal with disruptive and problem students. 25 Or App at 87. The employer school district took the position that it could not be required to bargain over that subject because the school board was required by statute to adopt disciplinary rules that were consistent with rules promulgated by the State Board of Education. *Id.* We concluded that "the local board cannot agree to adopt rules inconsistent with the statewide rules, but we see no reason

why this prevents it from bargaining as to the content of its rules so long as the rules eventually promulgated are consistent with the statewide rules." *Id.* at 87-88.

■ From those cases, we can discern that an employer cannot be required to bargain over a proposal that proposes something that is directly contrary to a statutory command, but that an employer is required to bargain over a proposal concerning a mandatory subject of bargaining, even if there are statutory constraints on the employer concerning that subject, so long as the end result does not conflict with the statutory constraints. DAS does not contend otherwise. Rather, it contends that SEIU's proposal here does, in fact, conflict—at least implicitly—with statutory constraints.

■ DAS first points out that ORS 243.125(1) requires PEBB to "design benefits, devise specifications, analyze carrier responses to advertisements for bids and decide on the award of contracts" concerning benefit plan coverage for eligible employees. DAS notes that PEBB is the only state agency with express authority to provide health benefits plans for state employees. DAS further points out that DAS is required to "direct and manage all * * * insurance programs of state government except for employee benefit insurance programs as otherwise provided in ORS chapter 243." ORS 278.405. The employee benefit insurance programs "otherwise provided in ORS chapter 243" are those provided by PEBB, and may only be provided to "eligible" employees, which, by definition, excludes temporary employees. ORS 243.105(4). From those statutes, DAS reasons that it can direct and manage insurance programs *other than* employee benefits programs, but that only PEBB can offer employee benefit programs, and then only to "eligible" employees, and not temporary employees. DAS asserts that, because it is not authorized to offer employee benefits programs to *any* employees, and PEBB is not authorized to offer employee benefits to *temporary* employees, it follows that it cannot collectively bargain on the subject of benefits to temporary employees because it cannot, given those statutory limitations, provide health insurance to the temporary employees itself or through PEBB.

ERB rejected DAS's statutory construction on the ground that ORS 278.405 cannot be read to "strip DAS of any authority over health care benefits." ERB noted that the exception listed in ORS 278.405 is a limited one: DAS shall direct and manage insurance programs "except for employee benefit insurance programs as otherwise provided in ORS chapter 243." Employee benefit insurance programs "as otherwise provided in ORS chapter 243" are employee benefits programs that specifically exclude temporary employees from participation. Thus, ERB reasoned, since temporary employees are excluded from the PEBB coverage provided in ORS chapter 243, ORS 278.405 places no limitations on DAS in regard to negotiating insurance benefits for temporary employees.

■■ DAS argues that ERB was incorrect and that the text of ORS 278.405 supports its position that health insurance benefits for temporary employees are a prohibited subject of bargaining. That statute, as noted, provides in pertinent part that DAS "shall direct and manage all risk management and insurance programs of state government except for employee benefit insurance programs as otherwise provided in ORS chapter 243." DAS argues that "as otherwise provided in ORS chapter 243" does not modify "employee benefit insurance programs" but, instead, modifies the preceding phrase "direct and manage all * * * insurance programs." DAS proceeds from that premise to construct an argument that the legislature must have intended that state employees not entitled to health insurance through PEBB should not be able to receive health insurance. We need not explore the nuances of DAS's statutory construction argument, because its underlying syntactical premise is incorrect under the "doctrine of the last antecedent." DAS asserts that the phrase "as otherwise provided in ORS chapter 243" does *not* modify the phrase that immediately precedes it—"employee benefit insurance programs." The doctrine of the last antecedent, however, provides:

" 'Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is "the last word, phrase, or clause that can be made an antecedent without impairing

the meaning of the sentence." Thus a proviso usually is construed to apply to the provision or clause immediately preceding it. * * *

"'Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.'"

*State v. Webb*, 324 Or 380, 386, 927 P2d 79 (1996) (quoting Norman J. Singer, 2A *Sutherland Statutory Construction* § 47.33, 270 (5th ed 1992)). Here, the phrase "employee benefit insurance programs" is not separated from "as otherwise provided in ORS chapter 243" by a comma, nor is there any other textual indicator that the latter phrase modifies anything other than the former.

In sum, one of the essential premises to DAS's arguments—that ORS 278.405 prohibits it from "direct[ing] and manag[ing]" *any* employee benefit insurance program—is not supported by the text of that statute. Rather, ORS 278.405 gives DAS broad authority to "direct and manage *all* * * * insurance programs of state government," with only one exception, "employee benefit insurance programs as *otherwise provided* in ORS chapter 243." (Emphasis added.) It is undisputed that no employee benefit insurance program for temporary employees is "otherwise provided in ORS chapter 243." DAS's proposed construction of that statute would render meaningless the phrase "as otherwise provided in ORS chapter 243," and would read the exception to encompass *any* "employee benefit insurance programs," regardless of whether such programs are "otherwise provided in ORS chapter 243." In construing statutes, we are instructed not "to omit what has been inserted" by the legislature. ORS 174.010. DAS's proposed construction of ORS 278.405 would require us to do exactly that.[3]

---

[3] The dissent asserts that ORS 278.405 represents an "express statutory prohibition of DAS to direct and manage health benefit programs." *See* 183 Or App at 609 (Warren, S. J., dissenting). Again, however, that reading does not acknowledge, and gives no effect to, the statute's "as otherwise provided in ORS chapter 243" language as properly construed in accordance with the "doctrine of the last antecedent."

■ Further, even assuming, for the sake of argument, that we agreed that DAS cannot "direct and manage" *any* employee benefit insurance program because of ORS 278.405, and that it cannot offer such insurance to temporary employees through PEBB because PEBB can provide such insurance only to "eligible" employees, that still would not necessarily lead to the conclusion that bargaining over contributions to SEIU's Health and Welfare Trust is prohibited. DAS takes the position that, because it cannot provide insurance to temporary employees itself or through PEBB, it also cannot contribute to SEIU's Health and Welfare Trust Fund if those funds are to be used to provide health insurance benefits to the temporary employees. The reason, DAS posits, is that "it is axiomatic that what the government cannot do directly it cannot do indirectly." That axiom, however, requires some examination before it can be broadly interpreted to mean that a government agency may never contract for, or provide funds for, a service that it lacks statutory authority to provide directly.

The only case DAS cites for the proposition that a government cannot do indirectly anything that it cannot do directly is *Coos County v. State of Oregon*, 303 Or 173, 734 P2d 1348 (1987). The legal issues presented in that case, however, bear no similarity to the legal issue presented here, nor does the rule of law discussed there have any bearing on this case. The issue in *Coos County* was whether the county was estopped from claiming title to a piece of land based on a tax lien foreclosure. *Id.* at 175. At issue was a piece of land on which a county tax lien had attached in early 1930. The owner subsequently mortgaged the land to a state agency. *Id.* The county foreclosed the tax lien in 1935, naming the state agency as a defendant, but the agency did not appear. *Id.* at 176. The property was offered at a foreclosure sale but was not sold, so it was awarded by default to the county for the amount of unpaid taxes. Although the transfer of the property was properly recorded, the transfer was not reflected in the tax records of the county, and the county continued to assess the original owners for taxes between 1936 and 1940. *Id.* In 1940, the original owners deeded the property to the state agency, which released the mortgage. *Id.* The state recorded the deed in 1940. The county then proceeded to

assess forest patrol levies against the state for the property for more than 40 years. *Id.* In 1982, the state attempted to sell the land to a private company. A title search disclosed the county's ownership of the property. The county then sued the state for ejectment.

The pertinent issue in that case was whether the county was estopped from claiming an ownership interest in the land in light of its representations for over 40 years that the state had owned (and owed taxes on) the land. *Id.* at 180. After noting the significant limitations on estoppel against government entities, the court rejected the state's argument that the county's collection of forest patrol levies on the property "made by county employes within the scope of their statutory authority [were] sufficient to bind the county." *Id.* at 182. The court then announced the general rule that "the erroneous levy and collection of taxes on property will not estop a government body from asserting title to the property assessed." *Id.* at 183. In support of that proposition, the court cited a Kentucky case that explained the rule:

> " 'The reason for the rule is that the officers charged with the duty of assessing property and collecting the taxes thereon are without authority to convey public property, and what they cannot do directly they cannot do by indirection.' "

*Id.* (quoting *Middleton v. Commonwealth*, 200 Ky 237, 240-41, 254 SW 754 (1923)).

It is true that we have applied a variation on that rule of law in the context of contracts rather than limiting it to estoppel. In *Does 1-7 v. State of Oregon*, 164 Or App 543, 560, 993 P2d 822 (1999), *rev den*, 330 Or 138 (2000), the plaintiffs alleged that the state was bound by promises of confidentiality of birth records made by individuals who the plaintiffs claimed were acting as agents for the state. We rejected that argument, noting that, even if the representations had been made by agents of the state, "agents may not bind the state to any arrangement that contravenes the statutes." *Id.* We went on to state that if "agents were without authority to make such a promise, then it is a promise that cannot be enforced." *Id.* For that proposition, we cited *Harsh Investment Corp. v. State Housing Division*, 88 Or App 151,

744 P2d 588 (1987), *rev den*, 305 Or 273 (1988), which, in turn had held that "[t]hose who deal with state officers must know the extent of their authority and cannot claim by estoppel what they could not receive by contract."

■     That line of cases concerns situations in which an agent of the state makes promises without authority to do so and in contravention of statute. Those cases do not support the broad proposition that a state agency may not contract for services that it lacks specific statutory authority to provide directly. An agency has "only such power and authority as has been conferred upon it by its organic legislation." *Ochoco Const. v. DLCD*, 295 Or 422, 426, 667 P2d 499 (1983). An agency's power, however, "includes that expressly conferred by statute *as well as such implied power as is necessary to carry out the power expressly granted." Id.* (emphasis added).

DAS has wide-ranging authority. ORS 184.305 provides, in part:

> "The Oregon Department of Administrative Services is created. The purpose of the Oregon Department of Administrative Services is to improve the efficient and effective use of state resources through the provision of:

> "(1)   Government infrastructure services that can best be provided centrally, including but not limited to purchasing, risk management, facilities management, surplus property and motor fleet;

> "* * * * *

> "(5)   Personnel systems that promote fair, responsive and cost-effective human resource management[.]"

Given the breadth of DAS's charges, it is difficult to conceive that the legislature would not intend DAS to be able to contract for any services that it did not have specific authority to provide itself. In fact, ORS 279.712(1), which pertains to public contracting and purchasing, contains no hint of such a limitation on DAS, but gives DAS the broad authority to "purchase or otherwise provide for the acquisition or furnishing of *all* supplies, materials, equipment and services * * * required by state agencies[.]" (Emphasis added.) Similarly, "[a]ll collective bargaining between the state and its agencies and any certified or recognized exclusive employee representative of

classified employees shall be under the direction and supervision of [DAS]." ORS 240.321(1). Represented employees "shall have *all* aspects of their wages, hours and other terms and conditions of employment determined by collective bargaining agreements," with the exception of employee recruitment and selection. ORS 240.321(2) (emphasis added).

■        DAS has broad authority, not only to purchase equipment and services, but also to negotiate collective bargaining agreements. With that broad authority, it has the implied powers necessary to carry out its designated functions. *Ochoco Const.*, 295 Or at 426. In order to conclude that negotiation of health care benefits with SEIU is a prohibited subject of bargaining, we would have to conclude that health care benefits for temporary employees is not included within "all aspects of [employee] wages, hours and other terms and conditions of employment" because inclusion of that subject within that definition would conflict with other substantive provisions of law. As noted above, however, ORS 278.405 cannot be interpreted as DAS suggests to provide such a prohibition, and DAS points to no other statutory provision to support its proposition that health insurance benefits for temporary employees is a prohibited subject of bargaining.

DAS posits that our decision in *OPEU v. Dept. of Admin. Services*, 173 Or App 432, 22 P3d 251 (2001), supports its position that health benefits for temporary employees are a prohibited subject of bargaining. We disagree. The issue in that case was whether ERB erred in determining that temporary employees could be included in bargaining units that included nontemporary employees. *Id.* at 434. In determining whether such a bargaining unit was appropriate, we examined the difference between temporary and nontemporary employees. We stated:

"In contrast to temporary employees, regular-status employees generally may be hired only through open competition. *See* ORS 240.306. In addition, temporary employment may be terminated at will, but regular-status employment may be terminated only for cause or 'lack of work, curtailment of funds, or reorganization requiring a reduction in force.' ORS 240.316(2). *Temporary employees also are not entitled to health benefits*, whereas regular-status employees are entitled to health benefits. *See* ORS 243.135

(entitling 'eligible employees' to health benefit plans) and 243.105(4)(b)(D) (excluding temporary employees from definition of 'eligible employees')."

*Id.* at 438 (emphasis added).

That case does not stand for the proposition that health benefits for temporary employees are a prohibited subject of bargaining. It means only what it says: Temporary employees are not *entitled* to health benefits under the quoted statutes. That temporary employees do not enjoy the *automatic* entitlement to health benefits enjoyed by regular-status employees does not mean that their representative cannot *bargain* for any health benefits for temporary employees. Nothing in our opinion today conflicts with our observation in *OPEU* that temporary state employees lack a statutory entitlement to health benefits; we hold only that the subject of health benefits for temporary employees is not a prohibited subject of bargaining.

Because DAS has pointed to no statutory text or context that supports its position that health benefits for temporary employees are a prohibited subject of bargaining, we do not reach its derivative arguments concerning legislative history or its argument that its proposed construction is the only one that comports with public policy.[4]

Affirmed.

**WARREN, S. J.,** dissenting.

I dissent because I conclude that DAS may not provide health care benefits to temporary state employees. Accordingly, it committed no unfair labor practice when it refused to bargain over health benefits for them.

ORS 243.135(1) requires PEBB to contract for health benefits plans for eligible state employees. Temporary state employees are expressly not "eligible" for such benefits

---

[4] The legislative history to which DAS refers is from the enactment of ORS 278.405 in 1985. It consists solely of several descriptions of the statute that mention the exception for employee benefit programs but fail to mention the limitation "as otherwise provided by ORS chapter 243." ORS 278.405. Legislative history, however, cannot be used to establish an ambiguity in an otherwise unambiguous statute, *Does 1-7*, 164 Or App at 559, much less be used as a reason to "omit what has been inserted" into a statute. ORS 174.010.

under ORS 243.105(4). However, the majority says that DAS may provide such benefits under a broad general grant of authority to "direct and manage all * * * insurance programs of state government *except for employee benefit insurance programs as otherwise provided in ORS chapter 243.*" ORS 278.405 (emphasis added). Despite the express statutory prohibition of DAS to direct and manage health benefit programs, the majority concludes that DAS must nevertheless bargain over whether it shall make contributions to SEIU so that the union may purchase health benefit insurance for temporary employees.

In my view, the legislature has made a determination that prohibits DAS from either directly or indirectly funding health benefit insurance for temporary state employees. The rights of both regular and temporary state employees to receive health insurance have been fully addressed. Regular employees are to be provided that insurance and temporary employees are not. They are ineligible under the only statute that expressly addresses health insurance for state employees. PEBB may not provide those benefits to temporaries. In the absence of another statute expressly allowing for the provision of health benefits to temporary state employees, the most reasonable conclusion is that the legislature has made a complete expression of legislative policy. It has made a policy decision that the state will not provide health benefits to temporary state employees.

SEIU and the majority believe that DAS's authority to fund the insurance at issue derives from its authority to "direct and manage" insurance programs. ORS 278.405. But DAS is precluded by statute from directing and managing health benefit programs provided in ORS chapter 243. It is a basic rule of statutory construction that a specific expression of statutory intent controls over a more general statute that is inconsistent with it. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 611, 859 P2d 1143 (1993). It is virtually certain that, having once declared temporary employees ineligible for health benefit insurance, the legislature would not intend to permit DAS to fund such a program.

Whether health benefit insurance should be provided for temporary employees remains a matter of legislative concern. We should not interfere with the legislature's

policy choice by holding that DAS may be compelled to bargain over the disputed benefits and may thus be compelled to provide them. The legislature has given PEBB exclusive authority to provide health benefit insurance for state employees and, therefore, DAS has no statutory authority to provide or fund health benefit insurance. Thus, DAS cannot comply with SEIU's proposal, and it did not commit an unfair labor practice when it refused to bargain.