Argued and submitted December 23, 1992, affirmed October 20, 1993

AA AMBULANCE,
*Petitioner,*

*v.*

OFFICE OF MEDICAL
ASSISTANCE PROGRAMS,
*Respondent.*

(10151; CA A74428)

861 P2d 400

Christopher P. Thomas argued the cause for petitioner. With him on the brief were Steven A. Moskowitz and Moskowitz & Thomas.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

De MUNIZ, J.

---

* Leeson, J., *vice* Buttler, J., retired.

**De MUNIZ, J.**

Petitioner seeks review of a final order of the Office of Medical Assistance Programs (OMAP) denying payment for ambulance services petitioner provided to 22 OMAP clients. Petitioner asserts that OMAP erred in determining that OMAP's contract with Kaiser Health Plan (Kaiser) did not require Kaiser to pay petitioner. We affirm.

OMAP is an agency within the Oregon Department of Human Resources that administers the Medical Assistance Program. OAR 410-120-000(80). The Medical Assistance Program uses state and federal funds to pay for medical care provided to clients eligible for medicaid. *See* OAR 410-120-000(62)(a)-(d). Under OAR 410-120-580(1), OMAP is allowed to contract with health care and other medical service providers to deliver prepaid care to OMAP's clients. OMAP entered into a contract with Kaiser, whereby OMAP pays Kaiser a monthly fee to provide medical services and care. The contract requires Kaiser to bear the cost for ambulance services provided to OMAP clients within a specified service area if a physician approves of the order for an ambulance, or the ambulance is an emergency service. The contract between OMAP and Kaiser defines emergency services as "medically necessary health services that are immediately required because of an unforeseen illness or injury."[1]

Petitioner provided ambulance services on dispatch by the Multnomah County 911/Emergency Medical Services system (EMS) to 22 individuals who were enrolled as Kaiser members through OMAP. Petitioner billed Kaiser for those services. Kaiser denied payment on the ground that the services petitioner provided were not emergency services under the contract. Kaiser based its decision not to pay on the type of symptoms that the individuals were experiencing at the time the ambulance arrived on the scene, as shown by the "trip sheet" and any other information submitted to Kaiser. When Kaiser refused to pay, petitioner billed OMAP, which also refused to pay for the services. Petitioner requested a

---

[1] The contract between OMAP and Kaiser contains two definitions of emergency services. The parties agree that the slightly different wording of the definitions does not affect this case. We use the definition from the "Emergency Services Received from Providers not Contracting with Health Plan" section of the contract, because petitioner did not contract with Kaiser.

hearing pursuant to OAR 410-120-840(1)(a) and OAR 410-120-840(2)(a).

At the hearing, petitioner chose not to contest Kaiser's assertion that, in each of the 22 cases for which it refused to pay, the information obtained at the scene justified its conclusion that ambulance transport was not an emergency service under the contract. Instead, petitioner limited its claim to the argument that all ambulance dispatches from EMS are for medical emergencies and that the decision by EMS to dispatch an ambulance conclusively establishes that the ambulance service is an emergency service under the contract. Following the hearing, the director of OMAP issued a final order concluding that Kaiser was permitted to consider information obtained at the scene in determining whether ambulance transport was an emergency service under the contract.

■ On review, petitioner continues to assert that the EMS decision to dispatch an ambulance conclusively establishes that the ambulance service provided by petitioner is an emergency service under the contract. Petitioner contends that the director's contrary conclusion is wrong, because it undermines the "enforced supremacy" of the county's system of coordinating emergency medical services and requires emergency medical technicians to engage in medical diagnosis, contrary to ORS 823.020(4).

The legislature has required that the dispatch of public and private safety services be coordinated through a centralized 911 system in each county. See ORS 401.720(1); ORS 823.180. In accordance with that statutory mandate, Multnomah County has developed such a system and adopted an emergency medical service code and rules. Its EMS dispatchers rely on county triage guidelines to classify 911 calls for medical services as either emergencies or non-emergencies. Emergency service providers, such as petitioner, are required to respond to an EMS dispatch.[2] However, the county emergency medical services rules

---

[2] Multnomah County Code § 6.32.190 provides, in part:

"No applicant or licensee, applicant's or licensee's employe or any other person doing business as defined hereunder shall:

"* * * * *

"(I) Fail or refuse to respond to a dispatch order from the EMS Central Dispatch Office when the ambulance subject to the call is available for service[.]"

contemplate that the initial decision by EMS to dispatch an ambulance is not a conclusive determination that a medical emergency exists. EMS Rule 631-312 provides, in part:

> "*Cancellation.* Only EMS Central Dispatch may cancel or revise a dispatch order. *Vehicles arriving at an emergency scene shall promptly advise EMS Central Dispatch of information relevant to whether a dispatch order should be cancelled or revised.*" (Emphasis supplied.)

Nothing in ORS chapter 823 purports to control the reimbursement for emergency services or preclude health care providers who contract with the state from refusing to pay for nonemergency services. We fail to see how the legislature's intent that each county centralize and coordinate the delivery of emergency medical services should prevent a further assessment after dispatch of whether the situation is emergent or nonemergent; nor is it inconsistent with a health care provider's contractual right to pay only for ambulance services provided in legitimate emergencies.

■       Petitioner next argues that OMAP's order is based on the incorrect "presumption that the emergency medical technicians (EMTs) who operate ambulances may determine whether a particular individual should be treated on an emergency or non-emergency basis." According to petitioner, ORS 823.020(4) "prohibits" that kind of determination at the scene, because EMTs are prohibited, under the statute, from engaging in "medical diagnoses." Petitioner is wrong. ORS 823.020(4) does not purport to prohibit anything; it simply defines "emergency care" as not including "acts of medical diagnosis or prescription of therapeutic or corrective measures" for purposes of training and certification of EMTs. If petitioner were correct, the whole coordinated system for the delivery of emergency service would be misconceived, because EMS dispatchers would be unlawfully engaging in prohibited "medical diagnoses" when they make an initial decision to dispatch an ambulance on the basis of reported symptoms. We find nothing in ORS chapter 823 or the Multnomah County EMS Code that prohibits an EMT at the scene from reporting facts that bear on the question of whether a medical emergency exists and making a decision at the scene not to transport the patient.

■        Finally, petitioner contends that OMAP's final order is inconsistent with its previous determination that the services provided by petitioner were covered by payments already made by OMAP to Kaiser. Petitioner did not raise that issue at any stage in the proceedings below. We will not consider it for the first time on judicial review. *See EBI Ins. Co. v. Chandler*, 112 Or App 275, 828 P2d 1047 (1992).

Affirmed.