Argued and submitted October 17, Northwestern School of Law of Lewis & Clark College, Portland, affirmed December 19, 2001

Brandy STROEDER,
*Petitioner,*

*v.*

OFFICE OF MEDICAL ASSISTANCE PROGRAMS,
a Division of the Department of Human Services,
*Respondent.*

D4-3617-AK7110; A110956

37 P3d 1012

Barbee B. Lyon and Lorey Huber Freeman argued the cause for petitioner. With them on the briefs were Tonkon Torp LLP and Oregon Law Center.

Kelly Knivila, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Kistler and Brewer, Judges.

BREWER, J.

## BREWER, J.

Claimant seeks judicial review of a final order on reconsideration of the Office of Medical Assistance Programs (OMAP),[1] in which OMAP denied her request, under the Oregon Health Plan,[2] for coverage for services related to a combined lung and liver transplant. We conclude that OMAP properly denied coverage under its administrative rules pertaining to transplants and that its decision did not violate the Americans with Disabilities Act (ADA), 42 USC § 12101 *et seq.* Accordingly, we affirm.

We summarize the facts from the record and from OMAP's final order on reconsideration. Claimant suffers from cystic fibrosis and associated conditions including worsening portal hypertension, severe pulmonary involvement, and chronic liver disease. On December 7, 1999, her physician requested that OMAP authorize a referral to a hospital in Palo Alto, California, for evaluation for a "combined liver and lung transplant." On December 20, OMAP denied the request, on the ground that "this combination of organ transplants is not covered" by the Oregon Health Plan. According to the denial notice, under the applicable administrative rules, "irreversible liver disease is contra-indicated for lung transplant and uncorrectable failure of the lungs is contraindicated for liver transplant."

Claimant sought a hearing, which was held on March 22, 2000. On April 4, the hearing officer issued a final order reversing OMAP's decision. The hearing officer reasoned that, where claimant was seeking removal of both organs simultaneously, the rules relating to contraindication did not apply. The hearing officer also found that a preponderance of the evidence established as fact that there were no contraindications. Finally, the hearing officer reasoned that, although the list in the applicable administrative rule of

---

[1] Consistent with federal law, OMAP is the designated state agency coordinating the Medical Assistance Program, providing for payment for health care services to Oregonians eligible for Medicaid and other state and federally funded assistance programs. OAR 410-120-0000(71) (October 1, 1999); *see also* 42 USC § 1396(a)(5).

[2] As discussed below, the Oregon Health Plan is authorized under ORS 414.018 *et seq.*

approved organ transplants included several "paired" organ transplants, the absence of an express listing for a simultaneous lung and liver transplant was not significant, because the expressly listed paired organ transplants involved "closely interrelated organ systems that frequently are affected by the same disease process." The hearing officer concluded that, consistent with the rule, where both lung and liver transplants were separately listed, the simultaneous transplant of those organs was not prohibited. He therefore reversed OMAP's order denying coverage.

On April 10, 2000, OMAP withdrew the hearing officer's final order, on the ground that the hearing officer had incorrectly interpreted the rules governing organ transplants. On May 22, after reconsidering the matter, OMAP issued a proposed final order on reconsideration. Claimant submitted written exceptions, including exceptions to several proposed findings of fact. She also asserted that OMAP's interpretation of applicable provisions and its decision to deny her coverage violated the ADA and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. On June 8, OMAP issued its final order on reconsideration.

In its order, OMAP interpreted and applied OAR 410-120-1200, OAR 410-124-0000, OAR 410-141-0500, and related rules[3] and concluded that they did not authorize coverage for "simultaneous bilateral lung and liver transplant services." OMAP also determined that the decision to deny coverage did not violate the ADA or the Equal Protection or Due Process Clause; according to OMAP, the list of covered organ transplants complied not only with the ADA and those constitutional provisions but also with applicable Medicaid provisions. For those reasons, OMAP again denied coverage. This petition for judicial review followed.

In her first and second assignments of error, claimant asserts that OMAP erred in characterizing her request as one for a "simultaneous" lung and liver transplant and in finding that a witness had testified that there were no

---

[3] Unless otherwise noted, citations to OMAP's rules are to the versions in effect as of July 11, 1997. Pertinent portions of the cited rules are set out in the discussion below.

reported cases of successful lung-liver transplants in the United States. In her third assignment of error, claimant asserts that OMAP erred in interpreting its applicable rules as not authorizing services related to a lung and liver transplant. In her fourth and fifth assignments, she contends that OMAP's decision denying the requested services was contrary to Medicaid requirements, including the requirement that states provide similar treatment to similarly situated individuals and the requirement that the state establish reasonable standards for determining the amount, duration, and scope of services and that it was contrary to the ADA.

OMAP responds that it correctly interpreted its rules as prohibiting coverage for combined lung and liver transplant services and that, accordingly, it is immaterial whether it erred in characterizing those organ transplants as "simultaneous" or in finding that there were no reported cases of such transplants in the United States. OMAP also contends that, in any event, substantial evidence in the record supports the challenged findings. OMAP contends that claimant failed to raise her fourth assignment of error, relating to the purported violation of federal Medicaid requirements, in the administrative hearing and that the claimed error is not error apparent on the face of the record and this court therefore should decline to consider it. OMAP also asserts that, in any event, its list of covered organ transplants does not violate Medicaid's requirement relating to the treatment of similarly situated individuals or its reasonableness standards and that, to the extent that use of the list is contrary to the latter, those standards have been waived in Oregon by the relevant federal agency. Finally, OMAP asserts that its denial of coverage for a combined lung and liver transplant did not violate the ADA, because a combined lung and liver transplant is not a service that is offered to any person, disabled or nondisabled.

■ We review OMAP's factual findings for substantial evidence and its legal conclusions for errors of law. ORS 183.482(8)(a)-(c); *OPEU v. Dept. of Admin. Services*, 173 Or App 432, 22 P3d 251 (2001). We begin with claimant's first and second assignments of error, relating to OMAP's factual characterization of the requested transplants as "simultaneous" and its factual finding that there were no reported cases

of successful outcomes for combined lung and liver transplants in the United States. As to the former, in the December 7, 1999, request for approval of coverage, one of claimant's physicians, Dr. Terry, requested a "combined" lung and liver transplant. In the hearing, another physician, Dr. Powers, testified that, in such a procedure, the "two transplants are done at the same time." Based on those references, and considering the similarity of meaning of the terms "combined" and "simultaneous," we conclude that substantial evidence supports OMAP's finding.[4] Equally important, we perceive no legal significance to OMAP's ultimate decision in this case as between a characterization of the transplants as combined and a characterization of them as simultaneous. OMAP did not err as asserted in claimant's first assignment.

 As to OMAP's finding regarding successful outcomes for combined lung and liver transplants in the United States, claimant asserts, in part, that the record does not support the finding. She also objects that the finding was the equivalent of a finding that combined lung and liver transplants are "experimental" and therefore not a "reasonable medical option" and that such a finding may have erroneously contributed to OMAP's legal conclusion that her request must be denied. We conclude that claimant's objections are unfounded. Powers testified at the hearing that Stanford University had never completed such a transplant. Although he mentioned two other medical centers in the United States that he apparently believed were able to perform them, he did not state that they had actually done so. Nor does the record contain any other evidence of such surgeries in the United States. Accordingly, substantial evidence in the record supports OMAP's finding that "there [were] no *reported* cases of successful outcomes" for a combined lung and liver transplant in the United States. (Emphasis added.)

 We turn to claimant's third assignment of error, in which she asserts that OMAP incorrectly interpreted and

---

[4] The verb "combine" means "to bring into close relationship" or to "integrate." *Webster's Third New Int'l Dictionary*, 452 (unabridged ed 1993). A "close relationship" between events logically can include closeness in time. Thus, to characterize events, such as transplants, as "combined" is not materially different from characterizing them as "simultaneous," that is, as "existing or occurring at the same time." *Id.* at 2122.

applied its rule pertaining to organ transplant services. We review OMAP's interpretation of its rule to determine whether that interpretation was erroneous as a matter of law. ORS 182.482(8)(a). An agency's interpretation of its own rule is not erroneous and must be affirmed if the interpretation is plausible and is not inconsistent with the wording of the rule itself, with the rule's context, or with some other source of law. *See Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994); *see also ONRC Action v. Columbia Plywood, Inc.*, 332 Or 216, 224-25, 26 P3d 142 (2001); *Nichols v. Office of Medical Assistance Programs*, 171 Or App 255, 15 P3d 578 (2000).

Here, claimant asserts that OMAP's interpretation of its organ transplant services rule is inconsistent with the rule's text and, in effect, is not plausible. She asserts that there is no evidence in the record as to why some organs are listed in combination as well as singly; that there is no medical evidence that a combined lung and liver transplant differs from the sum of its two component transplants; that she clearly is eligible for a lung transplant and clearly is eligible for a liver transplant; and that, accordingly, OMAP's interpretation that the rule does not permit her to have both is a product of faulty logic and "semantics." Again, OMAP responds that its interpretation of the rule is correct, because it is consistent with both the text and the context of the rule, including other rules and statutes relating to the Oregon Health Plan.

Preliminarily, we note that, as pertinent here, OAR 410-120-1160 sets out general categories of services covered under the Oregon Health Plan and other medical assistance programs, including "Organ Transplant Services, as described in the Transplant Services Guide," that is, as described in OAR 410-124-0000 through OAR 410-124-0160.[5] OAR 410-120-1160(1)(y) (October 1, 1997). Conversely, OAR 410-120-1200(1) sets out general categories of services that are excluded from coverage "under any program or for any

---

[5] The record indicates that OMAP has prepared and distributed to the health care community so-called "provider guides" consisting of compendia of OMAP rules relating to various categories of medical services. As pertinent here, OMAP's Transplant Services provider guide reproduces OMAP's transplant services rules, as set out in OAR 410-124-0000 through OAR 410-124-0160.

group of eligible clients," including those that are "related to a non-covered service" and those that are identified in the "provider guides" as not covered. OAR 410-120-1200(1)(i), (k) (October 1, 1999). OAR 410-141-0500(1) also sets out general categories of services that are excluded from coverage for Oregon Health Plan clients, including services or items identified in OAR 410-120-1200; "[a]ny service or item identified in the appropriate provider guides as a non-covered service * * *"; and "[a]ny treatment, service, or item for a condition that is not listed in [the currently funded lines] of the [Oregon Health Plan] Prioritized List of Health Services * * *." OAR 410-141-0500(1)(a)-(c) (October 1, 1999); *see also* ORS 414.720 (providing for compilation by the state Health Services Commission of a prioritized list of health services). The cited rules indicate that covered transplant services are those authorized under OAR 410-124-0000 *et seq.* and that noncovered transplant services are those not described in the rules or not listed in the so-called prioritized list of health services.

■ With that understanding, we turn to the particular rule relating to transplant services. OAR 410-124-0000 provides, in part:

"(1) The Office of Medical Assistance Programs (OMAP) will make payment for prior authorized and emergency transplant services identified in these rules as covered, for eligible clients receiving the Basic Benefit Health Care Package and when OMAP transplant criteria described in OAR 410-124-0010 and 410-124-0060 through 410-124-0160 [are] met. * * * All transplants require prior authorization, except for kidney and cornea * * *.

"(2) The following types of transplants and transplant-related procedures are covered under the Medical Assistance [P]rogram:

"(a) Bone Marrow, Autologous and Allogenic;

"(b) Bone Marrow Harvesting and Peripheral Stem Cell Collection, Autologous;

"(c) Cord Blood, Allogenic;

"(d) Cornea;

"(e) Heart;

"(f) Heart-lung;

"(g) Kidney;

"(h) Liver;

"(i) Liver-Kidney;

"(j) Simultaneous Pancreas and Kidney transplants and Pancreas after Kidney transplants;

"(k) Peripheral stem cell, Autologous and Allogenic;

"(l) Single lung;

"(m) Bilateral lung;

"(n) Any other transplants the Health Services Commission and the Oregon Legislature determine are to be added to the Prioritized List of Health Services.

"(3) The following types of transplants are not covered by the Oregon Medical Assistance Program:

"(a) Any transplants not listed in subsection (2) of this rule;

"(b) Transplants which are considered experimental or investigational or which are performed on an experimental or investigational basis, as determined by OMAP;

"(c) Transplant services which are contraindicated, as described in [OAR] 410-124-0060 through 410-124-0160.

"* * * * *

"(8) Covered Transplant services are transplants which:

"(a) Are described in OAR 410-124-0000(2) and have been prior authorized for payment by OMAP * * *[.]

"* * * * *

"(9) Non-covered Transplant services are transplants and transplant related services which:

"(a) Are not described in this [provider] guide in OAR 410-124-0000(2); or

"(b) Are described in this [provider] guide in OAR 410-124-0000(3); or

"(c) Have not been prior authorized for payment by OMAP * * *; or

"* * * * *

"(e) Are not described as covered in OAR 410-141-0480."

By its terms, subsection (2) of the rule states that specified ("the following") types of transplants are covered. Conversely, subsection (3) of the rule states that types of transplants not listed in subsection (2) are not covered. Subsections (8) and (9) repeat those directives. Accordingly, the text of the rule indicates that the list of covered types of transplants is exclusive—only those types of transplants that are expressly listed are covered.

In addition, it is significant that subsections (2) and (3) of OAR 410-124-0000 refer to "types of transplants" that are, respectively, covered or not covered and that the list of covered "types of transplants" includes not only single-organ transplants, such as "Single lung" and "Liver," but also transplant "types" involving two of the same organ ("Bilateral lung") and transplants "types" involving two different organs ("Heart-Lung" and "Liver-Kidney").[6] The use of the phrase "types of transplants" and the fact that the rule expressly lists, as types of transplants, both single organs and combinations of organs suggest that the rule does not authorize payment for the transplant of *any* combination of listed organs; rather, it authorizes payment only for the specific single- or multiple-organ transplant "types" expressly listed. That is, by its terms, the rule suggests that, to the extent that covered types of transplants include transplants of multiple organs, covered types of transplants include only those combinations that are expressly listed.

Finally, the rule expressly lists "Simultaneous Pancreas and Kidney transplants and Pancreas after Kidney transplants." That listing confirms that, in compiling the list, the agency was cognizant that a multiple-organ transplant could occur sequentially as well as simultaneously. The listing therefore provides evidence that, in specifying single-organ transplants, the agency did not intend to authorize multiple organ transplants accomplished by way of the

---

[6] A "type" is "a particular kind, class, or group" or "something felt to be distinguishable as a variety or kind." *Webster's Third New Int'l Dictionary* at 2476.

sequential transplant of single organs, however close in time those transplants may occur.

For the stated reasons, OMAP's asserted interpretation of the rule—that it does not authorize coverage for a combined lung and liver transplant—is consistent with the rule's text.

The agency's interpretation also is consistent with the rule's context. We begin by examining other OMAP rules pertaining to transplant services. OAR 410-124-0060 through OAR 410-124-0160 set out criteria and contraindications for some, although not all, of the "types of transplants" listed in OAR 410-124-0000. Under OAR 410-124-0060, a person can be considered for a heart transplant if, among other criteria, the person has one or more of three qualifying diagnoses: heart failure of a specified class, progressive but reversible pulmonary hypertension with heart failure, or heart disease "with intractable ventricular arrhythmias not responsive to either medical or surgical therapy." OAR 410-124-0060(3). Under OAR 410-124-0065, a person can be considered for a single lung transplant if, among other criteria, the person has one or more of five qualifying diagnoses: fibrotic lung disease, pulmonary hypertension of a specified type, alpha 1-antitrypsin deficiency, Eisenmenger's syndrome of a specified type, or emphysema. OAR 410-124-0065(3). Under OAR 410-124-0070, a person can be considered for a bilateral lung transplant if, among other criteria, the person has one or more of six qualifying diagnoses: fibrotic lung disease, pulmonary hypertension, alpha 1-antitrypsin deficiency, Eisenmenger's syndrome, cystic fibrosis, or emphysema. OAR 410-124-0070(3). However, under OAR 410-124-0063, in order to be considered for a heart-lung transplant, a person must have a diagnosis of either Eisenmenger's syndrome, cystic fibrosis, primary pulmonary hypertension, or emphysema.

Thus, some of the diagnoses that qualify a person to be considered for a heart transplant or for a single or bilateral lung transplant nevertheless are insufficient to qualify a person for consideration for a combined heart-lung transplant. Stated another way, the qualifying diagnoses for a combined

heart-lung transplant are not simply the sum of the qualifying diagnoses for a heart transplant and those for a single or bilateral lung transplant. Accordingly, OAR 410-124-0060 through OAR 410-124-0070 support OMAP's understanding that OAR 410-124-0000 does not authorize the transplant of a combination of listed organs unless that particular combination of organs is itself expressly listed—regardless of whether the transplant of each organ is separately authorized.

■ We also consider whether OMAP's interpretation of OAR 410-124-0000 is consistent with statutes and rules pertaining generally to the Oregon Health Plan. As noted above, the Oregon Health Plan is authorized under ORS chapter 414. Under ORS 414.720, the Health Services Commission is required to prepare a list of health services, ranked by priority based on the comparative benefits of each service. ORS 414.720(3).[7] As currently formulated, the list describes funded services in the form of pairs of diagnoses and treatments; for example, line 107 of the list contains the diagnosis of "biliary atresia" paired with the treatment of "liver transplant." State agencies are not authorized to alter the prioritized list. ORS 414.720(3). Under ORS 414.065, however, the Department of Human Services is authorized to determine, subject to legislative funding, the "types and extent"—that is, which and how many—of the listed services are to be provided to eligible recipients.[8] *See also* ORS 414.705 (defining "health services" as those provider, outpatient, inpatient, and other services that are approved and funded by the Legislative Assembly); ORS 414.735 (requiring legislative approval before instituting reductions in health services).

The department, through OMAP, has done so by rule, both as to the "types and extent" of covered services and

----

[7] OMAP has provided this court with excerpts from the prioritized list; in addition, we have reviewed the list as published on OMAP's site on the World Wide Web. We take judicial notice of it. *See* OEC 201(b)(2) (providing that court may take judicial notice of facts that are not subject to reasonable dispute in that they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned); OEC 202(2) (providing for judicial notice of official acts of, *inter alia*, this state's executive department).

[8] ORS 414.065 was amended by the 2001 Legislative Assembly; the amendment is not material here. Or Laws 2001, ch 875, § 1.

as to the "standards" applicable to the provision of those services, including the criteria for eligibility for particular services. Under OAR 410-141-0480 (October 1, 1998), Oregon Health Plan clients are eligible to receive treatments for the conditions appearing on the "currently funded lines of the Prioritized List of Health Services adopted under OAR 410-141-0520 * * *." Under OAR 410-141-0520(5) (October 1, 1999), "the first 574 lines of the Prioritized List of Services [compiled pursuant to ORS 414.720(3)] are currently funded and covered for payment by OMAP." *See also* OAR 410-141-0500(1)(c) (October 1, 1999) (services not listed in lines 1 through 574 of the prioritized list are excluded from coverage). Review of the funded portion of the prioritized list indicates that it includes the diagnosis of cystic fibrosis at line 108, where it is paired with the treatment of "medical therapy"; and at line 445, where it is paired with the treatment of "heart-lung and lung transplants." The list does not, however, contain a listing pairing the diagnosis of cystic fibrosis with the treatment of a combined lung and liver transplant. Indeed, no listing involving *any* diagnosis provides for treatment by way of a combined lung and liver transplant. Accordingly, OMAP's interpretation of its transplant services rule, OAR 410-124-0000—that it does not authorize coverage for a combined lung and liver transplant—is consistent with—indeed, appears to be required by—the statutes and rules providing generally for the Oregon Health Plan, including those relating to the prioritized list of funded health services.

In summary, OMAP's interpretation of OAR 410-124-0000 is plausible and is not inconsistent with the wording of the rule itself or with the rule's context. Accordingly, OMAP's decision based on its interpretation of that rule, in which it denied claimant's request for a combined lung and liver transplant, is not erroneous for the reasons asserted by claimant in her third assignment of error.

■ In her fourth assignment of error, claimant argues that OMAP's decision based on its organ transplant rule constituted an erroneous interpretation of, and thus was in violation of, federal Medicaid statutes and regulations. OMAP initially responds that claimant failed to assert before the agency that its decision violates the Medicaid statute or its implementing regulations. Claimant concedes that she failed

to raise before the agency any of the issues, arguments, or authorities on which she relies in her fourth assignment. Claimant's fourth assignment of error is not preserved, and the asserted error is not plain error apparent on the face of the record because the legal points on which claimant relies are not obvious and are reasonably in dispute. *See State v. Reyes-Camarena*, 330 Or 431, 435-36, 7 P3d 522 (2000). Accordingly, we cannot consider it for the first time on judicial review. *State v. Wyatt*, 331 Or 335, 346, 15 P3d 22 (2000); *AA Ambulance v. Office of Medical Assistance*, 124 Or App 71, 76, 861 P2d 400 (1993); ORAP 5.45(2) (1999).

We turn to claimant's fifth assignment of error, in which she argues that OMAP's decision is reversible as a violation of the ADA. *See* ORS 183.482(8)(a), (b)(C). According to claimant, the denial of her request for a combined lung and liver transplant violates proscriptions in the ADA and its implementing federal regulations, including 28 CFR § 35.130(b)(1)(ii) and (iii), against providing to disabled persons lesser opportunities to participate in or benefit from programs or services, or providing them with less effective benefits or services, than are provided to nondisabled persons. Claimant relies, in part, on cases from other jurisdictions applying the ADA and the federal Rehabilitation Act of 1973, 29 USC § 794.[9] She also relies on a provision of OMAP's Medicaid waiver agreement with the Health Care Financing Administration (HCFA) of the United States Department of Health and Human Services that was intended, she asserts, to address HCFA's concerns regarding compliance with the ADA[10]; the provision requires providers to provide treatment in cases of condition-treatment pairs not appearing on Oregon's Prioritized list and condition-treatment pairs that are unfunded but that are associated with "co-morbid" conditions, where "the expected outcome is comparable to that of a funded condition-treatment pair."

---

[9] Section 12133 of the ADA provides that "[t]he remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights" applicable under 42 USC § 12132 "discrimination" claims, discussed below.

[10] HCFA has been renamed the Center for Medicaid and Medicare Services. For consistency with the parties' opening briefs, we refer to it as the former.

In response, OMAP does not dispute that claimant is an individual with a disability for the purpose of the ADA and that she meets the essential eligibility requirements for the Oregon Health Plan as a whole. It contends, however, that its denial of a combined lung and liver transplant does not violate the ADA because, under the Oregon Health Plan, no other citizen is provided with that service and because the denial of the service was not "by reason of" claimant's disability. OMAP also contends that claimant failed to raise in the proceeding below any issue relating to HCFA's waiver agreement with OMAP; that, in any event, its rules relating to organ transplants are consistent with the terms and conditions of the waiver; and that, even if they are not, any inconsistency does not demonstrate that OMAP violated the ADA in an independently remediable manner.

■ 42 USC § 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See also* 28 CFR § 35.130(a); 28 CFR § 35.130(b)(1)(i)-(iii) (in providing any aid, benefit, or service, a public entity may not provide a qualified individual with a disability an opportunity to benefit from the service that is not equal to the opportunity that is afforded to others or provide the individual with a service that is not as effective as that provided to others). A "qualified individual with a disability" is

> "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 USC § 12131(2).

We agree with OMAP that, because the service that was denied to claimant is not one that is provided to nondisabled persons, the denial did not violate the ADA. *Rodriguez v. City of New York,* 197 F3d 611 (2d Cir 1999), *cert den* 531 US 864 (2000), cited by OMAP, is instructive. In that case, New York State's program of services to Medicaid-eligible persons included coverage for certain enumerated personal

care services—which, as the court noted, are not among the services required under the Medicaid statutes.[11] *Id.* at 613. A class of Medicaid-eligible persons suffering from mental disabilities (including Alzheimer's disease) challenged New York's failure to provide, as a personal care service, "safety monitoring," asserting that the failure to provide that service violated, *inter alia*, the ADA. *Id.* at 614.

The Second Circuit Court of Appeals rejected that assertion, reasoning that, where New York provided the "identical" services to mentally and physically disabled Medicaid recipients, the mentally disabled claimants were in effect challenging, "not illegal discrimination against the [mentally] disabled, but the substance of the services provided. Thus, New York cannot have unlawfully discriminated against [the mentally disabled plaintiffs] by denying a benefit it provides to no one. *See* 42 USC § 12132." *Id.* at 618 (citing and quoting *Alexander v. Choate*, 469 US 287, 105 S Ct 712, 83 L Ed 2d 661 (1985)) (citations and internal quotations omitted). The court also reasoned that, in any event, the plaintiffs did not "meet the essential eligibility requirements for the receipt" of the requested safety monitoring services, as required under 42 USC § 12131(2), because New York did "not even have any such requirements." *Id.*

The court noted that, in *Olmstead v. L.C.*, 527 US 581, 119 S Ct 2176, 144 L Ed 2d 540 (1999), the United States Supreme Court expressly rejected the proposition that the ADA "imposes on the States a standard of care for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities"; rather, the Court held only that "States must adhere to the ADA's nondiscrimination requirement with regard to the services *they in fact provide*." *Rodriguez*, 197 F3d at 618-19 (citing and quoting *Olmstead*, 527 US at 603 n 14; internal quotation marks omitted; emphasis in *Rodriguez*). The court reiterated that, because New York did not provide the requested safety monitoring service "as a separate benefit to anyone, it does not violate the ADA by failing to provide" it to the disabled plaintiffs. *Rodriguez*, 197 F3d at 619.

---

[11] For example, New York provided coverage for bathing, toileting, dressing, feeding, and other personal care services. 197 F3d at 613-14.

That reasoning is applicable here. As discussed above, OAR 410-124-0000 does not provide coverage for a combined lung and liver transplant for *any* Oregon Health Plan recipient. Thus, as in *Rodriguez*, claimant cannot demonstrate that OMAP's denial of that benefit or service to her has discriminated against her on the basis of any disability she may have. Rather, in effect, claimant is challenging the substance of the services provided under that rule. Also as in *Rodriguez*, claimant cannot demonstrate that she met "the essential eligibility requirements" for the receipt of a combined lung and liver transplant, as required under 42 USC § 12131(2), because, under OAR 410-124-0000 and related rules, there are no such requirements. In short, OMAP's denial of a combined lung and liver transplant does not violate the ADA in the manner asserted.

Nor does claimant contend that the denial of a combined lung and liver transplant deprived her of the benefit of some other state-provided service, program or benefit apart from the requested transplant service itself. *See Crowder v. Kitagawa*, 81 F3d 1480 (9th Cir 1996) (concluding that Hawaii's 120-day quarantine for animals, including guide dogs for the blind, had a discriminatory "disparate impact" on visually impaired persons in violation of the ADA, because the quarantine denied them, by reason of their disability, meaningful access to other public services such as public transportation, parks, government buildings and tourist attractions to which nondisabled persons had access).

Finally, as previously noted, in asserting that OMAP's denial of a combined lung and liver transplant violated the ADA, claimant asserts that OMAP's rules relating to organ transplants violate a portion of HCFA's waiver agreement with OMAP.[12] Claimant failed to raise that issue before OMAP. Moreover, both the factual and legal record below and claimant's arguments on review regarding the waiver document are inadequate for our proper resolution of that issue. In any event, we have already determined that

---

[12] The document claimant relies on is appended to her opening brief in this court. It was not included in the agency record.

OMAP's decision did not violate the ADA for the other reasons asserted by claimant.

Affirmed.